EVERS, J. T. C.
The Borough of Wood-Ridge (borough) moved for leave to file a counterclaim beyond the time limits prescribed in response to the 1980 complaint filed by Curtiss-Wright Corporation (taxpayer). This motion and taxpayer’s argument in opposition thereto presents to the Court the task of construing and applying to this situation various rules of procedure and oft cited decisions which are basic to the tax court practice. The facts follow.
Taxpayer is the largest taxpayer in the borough and one of the largest taxpayers in the entire state. In May 1979 the parties entered into an agreement which ostensibly disposed of *146 taxpayer’s then pending appeals in the Division of Tax Appeals and the Tax Court for the tax years 1974-1979 inclusive. With respect to the 1980 tax year, the pertinent part of the agreement provided for an assessment of $38,660,400 and stated:
Curtiss-Wright agrees that for the taxing year 1980, it will not file any tax appeal or institute any other legal proceeding having as its purpose the reduction of its assessment, providing, however, that the assessment shall not exceed $38,660,400, unless modified as hereinafter set forth. This provision shall not be effective in the event that in the year 1980 the final tax rate for the Borough of Wood-Ridge exceeds the 1979 tax rate by more than 10%; that is to say, Curtiss-Wright shall be privileged to file appeals seeking a reduction in its assessment to the same extent as if this agreement had not been entered into.
A greater than 10% increase of the 1980 tax rate caused the agreement to self-destruct and pursuant to Rule 8:2(c)[1] taxpayer, on August 14, 1980, filed a complaint with the Tax Court, a copy thereof being served on the borough on August 15, 1980. On September 3, 1980, borough convened a special meeting of the governing body and authorized its attorney to take appropriate action with respect to the complaint. On October 8, 1980, borough brought this motion which was made returnable on October 23, 1980.
Tax Court Rule 8:3-2 permits the filing of responsive pleadings to a complaint, i. e., an answer and/or counterclaim. Rule 4:6-1 mandates that such responsive pleadings be filed within 20 days of service; here no later than September 5,1980. Obviously borough has not complied with the time requirements, but seeks relief on the basis of Rule 4:7-4, which, in pertinent part, allows the filing of a counterclaim out of time where the late filing results from excusable neglect or where justice, in the discretion of the court, demands such relief.
*147 Borough argues that its negligence is excusable because of the actions and representations of the taxpayer which, according to borough, lulled it into thinking that a 1980 complaint would not be filed. The inevitable procrastination of the municipal decision making process, according to the borough attorney, made it impossible to satisfy the time requirements. The borough’s somnolescent attitude was also encouraged through discussion with taxpayer’s representatives by virtue of which, again according to borough, lulled it into a belief that no objection would be made to the instant motion.[2]
The theme of this argument pervaded borough’s position and must be viewed in proper perspective. The $38,000,000 assessment results in an annual tax bill of $831,000. As noted earlier, the assessment resulted from a compromise — it was artificially manufactured — and did not represent the true value of the property. According to the parties, the property’s value ranged between $20,000,000 and $70,000,000. If it is susceptible to adjustment, and if the taxpayer prevails, the assessment can only be decreased.
Borough’s arguments concerning taxpayer’s representations and its (the borough’s) reliance thereon are unimpressive. Assuming arguendo, taxpayer’s actions were deliberately conceived to lull the borough into a false sense of security the filing of the complaint by the taxpayer was, or should have been, sufficient notice to the borough that negotiations were at an end and should have triggered it into action at that point. The fact that the Tax Court only came into being in July 1979 provides borough with no excuse for its failure to take timely action. I conclude therefore that there exists no “excusable neglect” on the part of the borough or its representatives.
Borough further argues that taxpayer’s election to forego a county tax board hearing in favor of proceeding directly to the Tax Court effectively bars taxpayer from claiming N.J.S.A. *148 54:3—21 limitations as a bar to borough’s claim. This argument affords no comfort to borough as taxpayer’s actions were right, proper and in accord with Rule 8:2(c).
Lastly, borough urges that the statutory time limit should be tolled in recognition of the underlying legislative purpose, as expressed in White v. Violent Crimes Compensation Board, 76 N.J. 368, 388 A.2d 206 (1978). That argument was effectively disposed of in Prospect Hill Gardens v. Flemington, 172 N.J.Super. 245, 1 N.J.Tax 224, 411 A.2d 737 (Tax Ct.1980).
Taxpayer urges that a literal application of the language of N.J.S.A. 54:3-21 is dispositive of borough’s argument. In pertinent part the statute states:
A taxpayer ... or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may on or before August 15 appeal to the county board of taxation .. .; provided, however, that any such taxpayer or taxing district may on or before August 15 file a petition of appeal directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $750,000....
The language of N.J.S.A. 54:3-21 is, at once, both simple and deceptive. When read in terms of Cleff Realty Co. v. Jersey City, 41 N.J.Super. 465, 125 A.2d 423 (App.Div.1956), it means that discrimination, being a separate and new cause of action, the filing of an untimely counterclaim is clearly improper notwithstanding any principles of “equitable” relaxation of time constraints. Cleff, in these circumstances, would simply deprive the court of the necessary jurisdiction to grant relief to the borough.
Conversely, N.J.S.A. 54:3-21 is deceptive when construed in terms of Jersey City v. Division of Tax Appeals, 5 N.J.Super. 375, 69 A.2d 331 (App.Div.1949), aff’d 5 N.J. 433, 75 A.2d 865 (1950). In Jersey City the taxing district filed a multitude of appeals to the Hudson County Board of Taxation. After that Board dismissed the appeals, the Division of Tax Appeals dismissed the appeals for lack of jurisdiction pursuant to N.J.S.A. 54:3-21. It was clear from the pleadings that the complaint was not based on “discrimination” despite language stating that Jersey City felt it was “discriminated against for the reason that *149 said assessment is below true value”. The court reversed the Division of Tax Appeals and held, at 381, 69 A.2d 331:
We find, however, that the jurisdiction to hear the appeals in question was conferred upon the county board by R.S. 54:3 -21. This allows “a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district” to appeal to the county board. It was doubtless because the revisors considered that this grant of power included in its scope the jurisdiction given by section 28 of the Laws of 1903 [L.1903, c. 208, sec. 28, pg. 412] over complaints by a taxing district that assessments were too low, that they omitted a like grant of jurisdiction from section 20 of the revision [N.J.S.A. 54:3-20]. Section 21 [N.J.S.A. 54:3-21] is taken from Section 701 of The Tax Act of 1918 [Laws of 1918, c. 236, sec. 701, pg. 879], the same section that was considered in New York State Realty and Terminal Company vs. Hudson County Board of Taxation, supra, [102 N.J.L. 314, 132 A. 75 (E. & A. 1926)]. That decision turned upon the question whether section 701 governed an appeal by the taxing district based on a complaint that property was assessed too low. The Court of Errors and Appeals held that the section did govern, and that it gave jurisdiction to the county board.
While taxpayer’s argument, i. e., that borough’s appeal must be founded in discrimination may appear to be novel, it is clear that the very question was squarely addressed and disposed of in 1949 by both the Appellate Division and Supreme Courts of this state. Simply put, with respect to “municipal appeals”, discrimination pursuant to N.J.S.A. 54:3-21 is not identical to the discrimination dealt with in taxpayer’s appeals. See e. g. In re Appeal of Kents, 34 N.J. 21, 166 A.2d 763 (1961). That finding takes on added impact when considered in light of the circumstances of this matter. Accordingly, I find that taxpayer’s reliance on Cleff Realty, supra, is misplaced.
The rationale of Cleff Realty is equally inapposite for an additional reason. Here plaintiff chose to forego the county board route and proceed directly to the Tax Court. The linchpin of Cleff Realty was the fact that the discrimination claim was absent at the county board level, id., 470-471, 125 A.2d 423, and that the Division of Tax Appeals was an appellate tribunal, id. 470, 125 A.2d 423. That court, of course, merely recognized the hornbook proposition that a new cause of action cannot be initiated in an appellate tribunal. This court is a court of original jurisdiction. Thus Cleff Realty presents no barrier herein. Still remaining for consideration is borough’s argument that “justice requires” that its motion be granted.
*150 Taxpayer argues, and properly so, the raison d’etre of this controversy concerns the principle that absent a timely appeal a taxing district is not entitled to an increase of its assessment. Matawan v. Tree Haven Apartments, Inc., 108 N.J.Super. 111, 260 A.2d 235 (App.Div.1969). If, in fact, a taxing district is not allowed to file a responsive pleading, Matawan appears to dictate that unless the assessment herein is affirmed, it can only be decreased.
Still to be considered is the ability of a defendant to file a counterclaim in view of the well settled principles requiring strict compliance with filing dates in tax matters. Prospect Hill Gardens v. Flemington, supra. Prospect Hill, however, and the cases cited therein, are clearly distinguishable from the case sub judice. Those matters dealt with an untimely filing of an initial pleading. Here the complaint, which put in issue the questions of valuation and discrimination, was timely filed. The borough seeks only to respond to that initial pleading and the issues set forth therein. Doubtless, the borough seeks to increase the compromised assessment figure to, what it considers to be, true value. While in the usual sense of the term a counterclaim is a cause of action in and of itself and must therefore be timely filed, such is not the case here. In its complaint taxpayer argues that the assessment exceeds true value. It also argues that the assessment is discriminatory. The taxing district seeks the opportunity to argue and present proofs in support thereof, that the assessment was lower than true value and that unless it is increased, it (the assessment) will be unfair (discriminatory) as to other borough taxpayers. Viewed in this light the counterclaim would introduce no new matter and would not prejudice the taxpayer.
In Atlantic City Hospital v. Finkle, 110 N.J.Super. 435, 265 A. 2d 853 (L.Div.1970) plaintiff filed a complaint against the defendant for services rendered well within the contract statute of limitations (N.J.S.A. 2A:14-1). Defendant filed an answer and counterclaim based on personal injuries sustained at the hospital as a result of claimant’s breach of warranty. The counterclaim *151 was filed 20 months after the complaint and one year after the personal injury statute of limitations (N.J.S.A. 2A:14-2). The court allowed the untimely claim and stated, at 440, 265 A.2d 853:
. . . however, where the subject of the defendant’s claim is intertwined with the cause of action advanced by the complaint, timely filed, reason and logic dictate that defendant’s claim should not be denied on account of the passage of time.
When the counterclaim involves the same factual complex or transaction upon which plaintiff relies, it should not be considered to be stale because the same facts required to be exhibited by defendant generally will support the affirmative relief sought. Thus, the reason for the application of the statute no longer exists. . . .
Accord In re Arbitration between Mary and William Harris, 140 N.J.Super., 10 354 A.2d 704 (App.Div.1976).
It is true that the court found that the counterclaim was in the nature of “recoupment” but I find this to be of no moment since the court in Atlantic City Hospital was merely emphasizing that a recoupment is not a new cause of action unlike a set-off which actually arises ... “out of a completely independent and unrelated transaction”. Id. at 439, 265 A.2d 853. See also C. F. Seabrook Company v. Beck, 174 N.J.Super 577, 588, 417 A.2d 89 (App.Div.1980). It would follow that if a new cause of action would have been asserted, in the form of a set-off, such an untimely counterclaim would have been barred. See Beneficial Finance Company v. Swaggerty, 159 N.J.Super. 507, 388 A. 2d 647 (Dist.Ct.1978), aff’d. 170 N.J.Super. 398, 406 A.2d 976 (App.Div.1979).[3]
In Giambuttista v. Bradlees, Inc., 130 N.J.Super. 381, 327 A.2d 256 (L.Div.1974) defendant attempted to file an untimely counterclaim subsequent to the filing of a timely answer, by way of a supplemental pleading. The counterclaim was barred after the *152 point in time when the answer was filed. The court observed at 383, 327 A.2d 256:
Even if the statute of limitations had run on the employee’s claim between the filing of the complaint and the filing of the answer, such as may occur when a plaintiff files on the last day, or a few days before the end of the period of limitations, some decisions indicate that justice requires such a counterclaim not be barred by the statute of limitations. A contrary holding would encourage many plaintiffs with weak claims to file on the last day to avoid counterclaims. See Azada v. Carson, 252 F.Supp. 988 (Dist. of Haw.1966).
It went on to state at 385, 327 A.2d 256:
... In this action, the problem is whether there can be affirmative relief. The reason underlying the general rule, stated above — that if, when the plaintiff commences the action, defendant has a counterclaim not then barred by the statute of limitations, then the statute will not bar the counterclaim during the pendency of the action — is intended to protect the defendant in two situations.
First, if plaintiff commences the action late, so that the statute of limitations will run before defendant can assert his or her claim out of the same transaction, then defendant should have a chance to assert the claim. This explains the language in some cases, that plaintiff has agreed, or is deemed to have agreed, to a waiver of the statute of limitations. See Azada v. Carson, supra.
The second is that if a defendant has asserted his claim, either before the statute has run or under the circumstances discussed in the preceding paragraph, the claim is asserted just as much as if defendant had a complaint as a plaintiff and, therefore, the expiration of the period of limitations thereafter is immaterial. The action required to meet the purpose of the statute of limitations has been taken.
While none of the previous eases are squarely on point, taken together they demonstrate that under circumstances where a late counterclaim does not assert a new and distinct cause of action, the court may, in effect, toll a statute of limitations where there is no manifest prejudice to the opposing party. The decisions have tended to express this result in terms of allowing a recoupment versus a set-off. If this terminology can be understood to mean an action ineluctably related to that embodied in the complaint, then and only then does it make sense herein. In every sense of the word, defendant’s proposed action herein cannot be anything but a “recoupment”.
Based on the existing case law, I find no impediment to permit the borough from filing a counterclaim in this matter. In making this finding, I note that another — and perhaps more compelling reason — exists for the granting of the motion. In *153 arriving at this conclusion, a manifest and gross injustice to the many other Wood-Ridge taxpayers will be avoided. Although given the fact that value and discrimination are already in issue, it may be argued that a counterclaim is redundant, the Matawan decision allows an argument to be made that absent a counterclaim a finding of true value is limited by the original assessment. Again, arguably Matawan’s proscription has recently been diluted. (See Fort Lee v. Hudson Terrace Apartments, 175 N.J.Super. 221, 417 A.2d 1124 (App.Div.1980). Certif. den. 85 N.J. 459, 427 A.2d 559 (1980). It has not been overruled.
In these circumstances, where the assessment was artificially manufactured and admittedly does not represent true value, it would be a gross injustice to disallow either party the opportunity to attempt to prove the actual value of the property-
Pursuant to Rule 4:7 — 4 I find that justice requires that leave be granted to the borough to file a counterclaim. Borough shall submit an order pursuant to Rule 4:42-1 consistent with this opinion, which order shall further provide for the filing of said counterclaim no later than five days from the entry of said order.

 N.J.S.A. 54:3-21 provides in pertinent part "... any such taxpayer or taxing district may, on or before August 15 file a petition of appeal directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $750,000, and any party to an appeal pending on July 1, 1979 before a county board of taxation in which the assessed valuation of the property involved exceeds $750,000 shall be entitled, upon application to the county board, to have the appeal transferred to the Tax Court by the county tax board.... ”

 At oral argument taxpayer’s counsel registered no objection to an untimely filing of an answer, but strenuously objected to the filing of a counterclaim.

 Compare Gibbons v. Kosuga, 121 N.J.Super. 252, 296 A.2d 557 (L.Div.1972) for a case that held counterclaim was properly barred because it was untimely as of the date when the complaint was filed. Nonetheless the court held the defendant could recoup against the plaintiff. The case is far from lucid in its use of terminology. It is at the same time supportive of the Atlantic City Hospital case and obviously distinguishable.