187 N.J. Super. 455 (1982)
455 A.2d 504
THEODORE MURNICK AND MAXINE MURNICK, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
CITY OF ASBURY PARK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1982.
Decided November 24, 1982.
*456 Before Judges BOTTER, POLOW and BRODY.
Edward G. Rosenblum argued the cause for appellant (Rosenblum & Rosenblum, attorneys; Edward G. Rosenblum of counsel and on the brief).
*457 Carl G. Weisenfeld argued the cause for respondents (Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, attorneys; Carl G. Weisenfeld of counsel and on the brief).
The opinion of the court was delivered by POLOW, J.A.D.
Plaintiffs are the owners of a 15-story apartment building in Asbury Park. On their tax appeal the Tax Court granted reductions in total assessments for 1977, 1978 and 1979 based upon discrimination. Murnick v. Asbury Park, 2 N.J. Tax 168 (1981). Although the city filed a notice of appeal from the entire judgment, it has presented no argument with respect to the reduced assessment and tax rebate awarded to plaintiff's for the year 1977. It does challenge the ratios employed by the Tax Court in reducing the assessments for 1978 and 1979 as violations of N.J.S.A. 54:1-35a and N.J.S.A. 54:2-40.4 (chapter 123[1]).
On this appeal the city does not challenge the Tax Court determination with regard to true value for the years 1978 and 1979. It does challenge the taxpayers' right to receive any relief for the years 1978 and 1979, arguing that the trial judge erred in failing to apply chapter 123 ratios and that chapter 123 ratios would bar relief. The taxpayers insist that the Tax Court judge correctly held that in this case "Chapter 123 fails to provide an adequate and equitable remedy," 2 N.J. Tax at 191, for 1978 and correctly applied a stipulated ratio which would permit relief for 1979 although it may not be the chapter 123 ratio.
Hence, the basic controversy is whether the provisions of chapter 123 provide the exclusive method for adjudicating a taxpayer's right to discrimination relief. Such relief is available to a property owner whose tax assessment bears a substantially *458 higher ratio to true value than the "common level range" for other real property within the taxing district. If the Legislature intended chapter 123 ratios to be exclusive, its provisions are mandatory and may not be disregarded in favor of another formula. The city therefore insists that the Tax Court lacked discretion to vary from the chapter 123 ratio for 1978 and that any stipulation to vary from chapter 123 ratios in 1979 "must be declared void and unenforceable as a matter of law."
In In re Appeal of Kents, 2124 Atlantic Ave., Inc., 34 N.J. 21 (1961), the Supreme Court stressed that upon a showing of substantial unequal treatment in the ratio of assessments to true value within a municipality, relief should be available where there is a reasonable basis to compensate the wrong. Id. at 29. Similarly, in Piscataway Assoc., Inc., v. Piscataway Tp., 73 N.J. 546 (1977), the court held that "where a taxpayer's realty is assessed at true value and such assessment is substantially higher than the common level generally applied to other properties, or, in the absence of a common level, than the average ratio of the Director of Taxation, then the taxpayer ordinarily will have shown discrimination and is entitled to relief." Id. at 553-554 (footnote omitted). Still, our courts have long recognized the difficulty in fixing the average or common ratio within a municipality against which a particular taxpayer's assessment to true value ratio is to be measured. "Mathematical perfection in taxation is unobtainable, and hence relief should not be denied merely because the result lacks absolute precision." Kents, supra, 34 N.J. at 32.
N.J.S.A. 54:1-35a(b) fixes a "common level range" of plus or minus 15% of the average ratio determined by the Director of the Division of Taxation. This is the core of chapter 123 which was effective commencing with the tax year 1978. L. 1976, c. 33. For that year, the average ratio to be applied was the unweighted, unclassified, arithmetic average determined by the Director as of October 1 of the pretax year. However, the provision was further amended in 1979 to redefine the chapter 123 ratio as the Director's weighted ratio. The change from the unweighted to *459 the weighted ratio became applicable for the 1979 tax year. (See Senate, County & Municipal Government Statement, Assembly Bill 1492, L. 1979, c. 51).
For the tax year 1978 the Tax Court judge found that the then applicable statutory provision requiring use of the "unweighted" ratio was "inadequate" to provide relief for the taxpayers. 2 N.J. Tax at 191. The chapter 123 unweighted ratio was 80% of true value. Id. at 177. Plaintiffs' assessment was determined to be 91% of true value and therefore less than 15% above the "common level range" determined pursuant to the chapter 123 formula. Thus, the taxpayers would not have been entitled to relief under N.J.S.A. 54:1-35a. Id. at 190-191.
However, without statutory authority, the trial judge applied a ratio for the tax year 1978 of 73.42%. The taxpayers' assessment at 91% of true value ratio was then found considerably in excess of the 15% variation threshold for relief under Chapter 123. Id. at 191-192.
Although he agreed with the taxpayers' position that chapter 123 relief is not exclusive, the judge nevertheless declined to make a specific ruling in that regard. He found the relief granted permissible under Kents because he concluded that the legislative remedy was "inadequate." Id. at 177-178, 191.
We conclude that the Legislature mandated the use of chapter 123 as an exclusive remedy subject to the exceptions contained therein.[2]N.J.S.A. 54:2-40.4(a) provides:

Whenever the tax court is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment *460 revising the taxable value of the property by applying the average ratio to the true value of the property except as hereinafter provided. [Emphasis supplied]
The applicable statutory definitions effective for tax year 1978 under N.J.S.A. 54:1-35a provided:
a. The "average ratio" of assessed to true value of real property for a taxing district for the purposes of this act shall mean the unweighted, unclassified, arithmetic average as determined by the Director of the Division of Taxation from the latest 1-year study data complied by the director for the purposes of P.L. 1954, c. 86 (C. 54:1-35.1 et seq.), as of October 1 of the year preceding the tax year as revised by the Division of Tax Appeals.
b. The "common level range" for a taxing district is that range which is plus or minus 15% of the average ratio for that district.
We conclude that the words "whenever" and "shall" denote a mandatory provision. The statutory language leaves no room for interpretation  it was not intended simply as a "possible" solution to a discrimination problem, as the taxpayers argue. The word "shall" connotes a mandatory legislative intent unless it is used merely to effectuate a provision relating to form and manner. See Franklin Estates v. Edison Tp., 142 N.J. Super. 179, 184 (App.Div. 1976), aff'd 73 N.J. 462 (1977). That the Legislature intended chapter 123 to be the formula applied rather than a possible alternative solution is borne out by the Senate Judiciary Committee statement attached to the proposed legislation dated April 2, 1973:
This bill would establish procedures for adjusting the taxable value of property by the county boards of taxation, the Division of Tax Appeals and the Courts.
Under this bill, the Director of the Division of Taxation would determine by April 1 of each year the average ratio of assessed to true value of real property in each taxing district and a `common level range' for each district. That range would be plus or minus 15% of the average ratio.
The county boards of taxation and the State Division of Tax Appeals would then use that common level range as a comparison with the ratio of the assessed value to the true value of any property and if that ratio is outside of the range, the taxable value would be redetermined by applying the average ratio to the true value.
We find no indication in the foregoing statement that the statute was not intended to be mandatory or that its application was not intended to be exclusive.
*461 Although the title of chapter 123 makes reference to "certain rebuttable presumptions," the only "presumption" specifically referred to in the discrimination portion of the act deals with admission of the realty transfer fee and affidavit of consideration as prima facie evidence where "instruments of conveyance do not state the true consideration."[3] There is no basis for the taxpayers' argument that the statute prescribes the Director's ratio only as a "rebuttable presumption" in determining the common level range. The language is not permissive. N.J.S.A. 54:1-35a (a) and (b). Furthermore, "[t]he title to an act is not an index, merely a label, and thus the title should not be scrutinized with an overly technical eye." Howard Savings Inst. v. Kielb, 38 N.J. 186, 201 (1962).
We agree with the apt comment of Judge Evers in a later Tax Court decision that "the thrust of chapter 123 is to alleviate the statistical sleight-of-hand inherent in pre-chapter 123 discrimination claims." 525 Realty Hold. Co. v. Hasbrouck Heights, 3 N.J. Tax 206, 216 (Tax Ct. 1981). He also characterized the purpose of chapter 123 as an attempt to "fortify the fundamental, cardinal principle of taxation  stability of assessments." Ibid.
The trial judge rejected the chapter 123 formula for 1978 because it required utilization of the unweighted ratio (80%) which, when applied, left plaintiffs within 15% of the common level range and not entitled to relief. Instead, he applied a lower figure (73.42%) characterized as the "Director's average ratio for 1978," which brought plaintiffs' ratio outside the 15% limitation. 2 N.J. Tax at 190-191.
In Kents Chief Justice Weintraub discussed the use of unweighted as against weighted average ratio as the basis for *462 granting relief. He concluded that "until some better technique appears ... we are satisfied to use the average ratio (unweighted) ..." in discrimination cases. 34 N.J. at 33. In this case, there was nothing in the record to justify rejection of the unweighted ratio mandated by statute for the 1978 tax year. The absence of a common ratio[4] of assessments to true value does not justify noncompliance with the legislative mandate of chapter 123. In fact, chapter 123 was enacted to provide a uniform formula for relief from chaotic conditions of that kind. Since we conclude that the assessment level on the subject property for the 1978 tax year was within 15% of the "common level range" applicable pursuant to chapter 123 and not subject to modification, the judgment of the Tax Court, insofar as it deals with the assessment for that year, must be reversed.
We next turn to the determination with regard to the 1979 tax year. It is conceded that the city stipulated to the application of an average ratio of 63.09%. The city now insists that the chapter 123 ratio would have been greater. The stipulated ratio would entitle the taxpayer to relief since its original assessment to true value ratio exceeded 63.09% by more than 15%. Defendant does not dispute that the stipulation was made. Rather, it challenges the right of the court to accept such a stipulation.
We recognize that counsel for the city requested application of the 63.09% ratio. However, the record shows that he did so because he used the Director's figures for the wrong year. He failed to realize that chapter 123 requires use of the ratio for the pretax year.[5] The ratio requested and stipulated was based on the Director's 1979 study, whereas the statute would have required use of the ratio based upon his 1978 study.
*463 The Director's weighted ratio for the preceding tax year, mandated for use by chapter 123 for the 1979 tax year, was fixed and available. The use of any other ratio thus violates the statute and should be corrected under the plain error rule. R. 2:10-2. Hence, we vacate the judgment for the 1979 tax year and remand the tax appeal for that year for reconsideration. The applicable "common level range" must be determined based upon the Director's weighted average for the previous tax year. The taxpayers contend that they relied on the stipulation and therefore did not attempt to attack the director's ratio calculations. On remand, the chapter 123 ratio applicable for the 1979 tax year must be determined and the tax refund, if any, must be adjusted accordingly. If the taxpayers' ratio does not meet the chapter 123 threshold, they should be afforded the opportunity to demonstrate error in the director's calculations if they so desire.
Finally, the judgment of the Tax Court reducing the assessment for the 1977 tax year must be affirmed. Chapter 123 was not applicable prior to 1978. Furthermore, although it has taken an appeal with regard thereto, the city has presented no argument to challenge the determination for that year. The city had no realistic basis for its appeal from the judgment in the taxpayers' favor for 1977; nevertheless, it has withheld payment of the tax refund for almost two years. We agree with the taxpayers that an inequity thus resulted. We therefore grant plaintiffs' application to dismiss the city's appeal for 1977 nunc pro tunc as of March 16, 1981.
The judgment for the 1978 tax year is reversed; the judgment for the 1979 tax year is vacated and remanded to the tax court for rehearing; defendant's appeal of the judgment for the 1977 tax year is dismissed, nunc pro tunc, as of March 16, 1981.
NOTES
[1] The statutory provisions incorporated in N.J.S.A. 54:1-35a and 54:2-40.4 were originally enacted by the Legislature in L. 1973, c. 123. Although pertinent amendments have since been enacted, the provisions are still commonly referred to as "chapter 123."
[2] Chapter 123 provides that its provisions do not apply for a tax year "in which the taxing district shall have completed and put into operation a district-wide revaluation program ... or a reassessment program...." N.J.S.A. 52:2-40.4(d).
[3] This provision was originally incorporated in N.J.S.A. 54:2-40.4(a), a subsection of chapter 123, but that paragraph has since been eliminated. The original subparagraph (b) is now designated as (a).
[4] The judge found that there was no "semblance of a common level" in Asbury Park in 1978. 2 N.J. Tax at 177.
[5] We note that counsel for the City on appeal did not represent the City before the Tax Court.